**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**BECKLEY DIVISION**

BARBARA KITCHEN,

      Plaintiff,

v.              CIVIL ACTION NO. 5:06-cv-00022

SUMMERS CONTINUOUS CARE
CENTER, LLC,

      Defendant.

**AMENDED MEMORANDUM OPINION**[1]

  Plaintiff Barbara Kitchen brings this action against Defendant Summers Nursing and Rehabilitation Center, LLC (formerly known as Summers Continuous Care Center, LLC) (Summers) alleging wrongful discharge and failure to accommodate in violation of the Americans with Disabilities Act (ADA) and the West Virginia Human Rights Act (WVHRA).[2] Pending before the Court is Summers' Motion for Summary Judgment [Docket 80]. For the reasons stated below, the motion is **GRANTED**.

---

[1] The original version of the following opinion was entered on May 7, 2008.

[2] Defendants Shaddock, LLC, and Commercial Holdings, Inc. and Plaintiff's claims under 42 U.S.C. § 1983 and the Family and Medical Leave Act, 29 U.S.C. §§ 2601- 54, were dismissed by stipulation on May 2, 2008. (*See* Docket 115.) Furthermore, on July 27, 2007, Plaintiff's wrongful denial of benefits claim against her plan administrator, Medical Benefits Administrators, Inc., which was brought pursuant to the Employee Retirement Income Security Act, 29 U.S.C. § 1132, was also dismissed with prejudice. (*See* Docket 37.)

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On May 1, 2005, Plaintiff was involved in an automobile accident that resulted in the loss of her left (dominant) arm above the elbow. At the time of the accident, Plaintiff worked for Summers, a 120-bed nursing home, as an Environmental Services Supervisor (ESS). According to the job description, the essential job functions of an ESS at Summers generally include: (1) being responsible for the housekeeping, laundry, and maintenance functions at Summers; (2) being able to lift in excess of forty pounds; (3) being able to climb ladders; and (4) having mechanical skills in order to repair and/or maintain all equipment, or arrange for outside assistance in repairs as needed.

Specifically, an ESS must be able to lift floor buffers and lawn mowers onto dollies and lift other supplies to stock shelves. An ESS must also be able to climb a ladder to change light bulbs, clean exhaust fans, change ceiling tiles, inspect the roof, change air filters, fix pipes, and mop, sweep, and strip the floors. On occasion, an ESS must be able to remove and change air conditioning units, and repair toilet seats and beds.

Additionally, it is the responsibility of an ESS to maintain the facility's sewage treatment plant. To access the plant, metal grates need to be moved and heavy drums of chemicals need to be unloaded from a truck and transported to the plant. Finally, and perhaps most importantly, an ESS must be able to assist with the evacuation of residents in case of an emergency.

Following her automobile accident and due to the loss of her left arm, Plaintiff applied for and was granted a twelve-week leave under the Family and Medical Leave Act (FMLA). Shortly before Plaintiff's FMLA leave was exhausted, on July 20, 2005, she submitted a request for an

additional, non-FMLA leave of absence until October 16, 2005.[3] This request was accompanied by a letter from Plaintiff's family doctor, Dr. Shammaa, which stated:

> Ms. Kitchen has been a patient at my office for many years. She has a recent history of amputation of the left arm at the mid humeral level secondary to an MVA. She was recently discharged from care with the physician at UVA. She is to continue follow up with her prosthetic care, physical therapy and her family physician, of which I am. *I feel she will need ninety (90) days off from work.*

(Docket 80-5 at 18; Docket 84-6 at 1) (emphasis added.)

Originally, Plaintiff's supervisor, Kimberly Martin, Summers' Administrator and Executive Director, approved the request. However, after meeting with Summers' Human Resource Director, Roy Howell, Ms. Martin denied Plaintiff's request for additional medical leave and terminated her employment on July 25, 2005. The termination letter, which was signed by Ms. Martin, invited Plaintiff to reapply once she was released by her doctor.[4] To date, Plaintiff has not reapplied.

Plaintiff filed her Complaint [Docket 1] on January 10, 2006. In her Complaint, Plaintiff alleges that her termination and Summers' failure to accommodate her was in violation of the ADA and the WVHRA because she was "a qualified person with a disability, [her] employer was clearly aware of [her] disability, [she] required a minimal accommodation in order to perform the essential functions of her job, a reasonable accommodation existed to meet [her] needs, [her employer] knew

---

[3] Under Summers' Leave of Absence Policy, once employees exhaust FMLA leave, employees may request a medical leave of absence not to exceed ninety days.

[4] Plaintiff has not proffered any evidence to support a finding that on the date of her termination, July 25, 2005, she was released to return to work by her doctor in any capacity. Furthermore, the record reflects that two months into the ninety day period of requested medical leave, Plaintiff was unable to work and the time for her return to work was "unknown" as Dr. Shammaa noted Plaintiff was "totally disabled" from "5/05" to "indefinite." (*See* Docket 80-6 at 10.)

or should have known of [her] need and the accommodation and the employer failed to provide any [reasonable] accommodation . . . ." (Docket 1 at 4.)

After discovery was completed, Summers filed a motion for summary judgment, which has been fully briefed by the parties and is now ripe for the Court's consideration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper where the pleadings, depositions, and affidavits in the record show that there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 322-23. When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party. *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123 (4th Cir. 1990). "[T]he nonmoving party nonetheless must offer some 'concrete evidence from which a reasonable juror could return a verdict in his [or her] favor[.]'" *Piedmont Behavioral Health Ctr., LLC v. Stewart*, 413 F. Supp. 2d 746, 751 (S.D. W. Va. 2006) (Goodwin, J.) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986)).

Importantly, Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. "The nonmoving party must satisfy this burden of proof by offering more than a mere 'scintilla of evidence' in support of his or her position." *Stewart*, 413 F. Supp. 2d at 751 (citing *Anderson*, 477 U.S. at 252).

## *III. DISCUSSION*

Pursuant to both the ADA and the WVHRA, an employer is prohibited from discriminating against a "qualified individual with a disability" because of that individual's disability.[5] 42 U.S.C. § 12112(a) ("No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."); W. Va. Code § 5-11-9(1) ("[i]t shall be an unlawful discriminatory practice . . . [f]or any employer to discriminate against an individual with respect to compensation, hire, tenure, terms, conditions or privileges of employment if the individual is able and competent to perform the services required even if such individual is . . . disabled[.]").

To establish a wrongful discharge claim under the ADA, Plaintiff must show that: "(1) she was a 'qualified individual with a disability'; (2) she was discharged; (3) she was fulfilling her employer's legitimate expectations at the time of discharge; and (4) the circumstances of her discharge raise a reasonable inference of unlawful discrimination." *Rohan v. Networks Presentations LLC*, 375 F.3d 266, 273 n.9 (4th Cir. 2004).

---

[5] Summers asserts that Plaintiff's ADA claim should be dismissed because Plaintiff never filed a charge with the Equal Employment Opportunity Commission. *See* 42 U.S.C. §§ 2000e-5, 12117(a). Plaintiff concedes that no charge was filed but argues that despite her failure, Summers waived the affirmative defense because Summers did not raise it in its answer or in a motion to dismiss as required by Fed. R. Civ. P. 8(c); *Zipes v. Trans World Airlines*, 455 U.S. 385, 386 (1982) ("[A] timely charge of discrimination with the EEOC is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling."). Because Plaintiff also alleges violation of the WVHRA, which does not require the filing of an administrative claim prior to filing suit, and because the "standards governing the ADA . . . and the WVRA are coextensive[,]" *Shafer v. Preston Mem. Hosp. Corp.*, 107 F.3d 274, 281 (4th Cir. 1997), this issue is inconsequential.

Similarly, regarding Plaintiff's wrongful discharge claim under the WVHRA, Plaintiff must establish the following elements: "(1) . . . she meets the definition of [disabled] (2) . . . she is a 'qualified [disabled] person,' and (3) . . . she was discharged from . . . her job."[6] *Hosaflook v. Consolidation Coal Co.*, 497 S.E.2d 174, 179 (W. Va. 1997). Further, with respect to her reasonable accommodation claim, the following elements must be proven:

> (1) The plaintiff is a qualified person with a disability; (2) the employer was aware of the plaintiff's disability; (3) the plaintiff required an accommodation in order to perform the essential functions of a job; (4) a reasonable accommodation existed that met the plaintiff's needs; (5) the employer knew or should have known of the plaintiff's need and of the accommodation; and (6) the employer failed to provide the accommodation.

Syl. pt. 2, *Skaggs v. Elk Run Coal Co.*, 479 S.E.2d 561 (W. Va. 1996).

Thus, to survive summary judgment on all of her claims, Plaintiff must produce more than a "mere scintilla of evidence" to support a finding that she was a "qualified individual with a disability" at the time she was fired. *See Wells v. BAE Sys. Norfolk Ship Repair*, 483 F. Supp. 2d 497, 506 (E.D. Va. 2007) (citing *EEOC v. Stowe-Pharr Mills, Inc*., 216 F.3d 373, 379 (4th Cir. 2000) ("The relevant date for determining whether a plaintiff is a 'qualified individual with a disability' and thus entitled to the ADA's protections is the date of the adverse employment decision complained of.").

Under the ADA, "[t]he term 'qualified individual with a disability' means an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of

---

[6] The Court uses the word "disabled" instead of "handicapped" because W. Va. Code § 5-11-9 was amended in 1998. *See W. Va. Univ./Ruby Mem'l Hosp. v. W. Va. Human Rights Comm'n ex rel. Prince*, 617 S.E.2d 524, 528 n.3 (W. Va. 2005) (noting the substitution of the word "disabled" for "handicapped"); *Stone v. St. Joseph's Hosp.*, 538 S.E.2d 389, 398 n.12 (W. Va. 2000) ("The terms 'handicap' and 'disability' are interchangeable in our and most jurisdictions' discrimination jurisprudence; more modern statutes use the term 'disability.'").

the employment position that such individual holds or desires." 42 U.S.C. § 12111(8). Likewise, "[a] 'qualified [disabled] person' under the [WVHRA] and the accompanying regulations is one who is able and competent, with reasonable accommodation, to perform the essential functions of the job in question." Syl. pt. 1, *Coffman v. W. Va. Board of Regents*, 386 S.E.2d 1 (1988); *see also* W. Va. C.S.R. § 77-1-4.4.2.

Plaintiff argues that Summers' motion for summary judgment should be denied because there is a genuine issue of material fact as to whether she could have performed the essential functions of her job with a reasonable accommodation. She asserts that Summers could only identify a few specific job functions that she could not perform and that these specific functions could have been performed with the minor assistance of a co-worker.[7] Further, she argues that it was her opinion that as of July 25, 2005, she could have done a majority of the essential duties of her job. In support of her argument, Plaintiff relies heavily on *Skaggs v. Elk Run Coal Co., Inc.*, 479 S.E.2d 561 (W. Va. 1996), and argues that, like the plaintiff in that case, she could have been teamed with another worker to complete the specific functions that she could not accomplish by herself -- such as removing the air conditioning units.

Even viewing the evidence in the light most favorable to Plaintiff, as the Court must, there is a fatal flaw to her position: on July 25, 2005, the date Summers terminated her employment, she

---

[7] Although Plaintiff agrees that there is no duty on behalf of an employer to reassign essential job functions, *Williams v. Charleston Area Med. Ctr.*, 592 S.E.2d 794, 800 (W. Va. 2003), she contends that the job functions she could not perform were not essential, but rather were marginal. *See* 29 C.F.R. pt. 1630, app. § 1630.2(o) (explaining that while reallocation of "nonessential, marginal job functions" is a potential reasonable accommodation, an employer need not reallocate essential functions).

was not released by her physician to return to work.[8]  It is well-settled that an individual who has not been released to work by his or her doctor is not a "qualified individual with a disability."  For example, the Sixth Circuit has held that "because [a plaintiff] was not released by her doctor to return to work, she has not met the second requirement that she be qualified to perform the essential functions of the job."  *Gantt v. Wilson Sporting Goods Co.*, 143 F.3d 1042, 1047 (6th Cir. 1998) (citing *Tyndall v. Nat'l Educ. Ctrs. Inc.*, 31 F.3d 209, 213 (4th Cir. 1994) for the proposition that "[a]n employee who cannot meet the attendance requirements of the job at issue cannot be considered a 'qualified' individual protected by the ADA[]").  Similarly, in *Crow v. McElroy Coal Co.*, 290 F. Supp. 2d 693, 696 (N.D. W. Va. 2003), the court stated: "Because [the plaintiff] failed to obtain a release to work from his doctor, [the plaintiff] has not shown that he can perform the essential functions of the job with or without reasonable accommodation."  *See also Gower v. Wrenn Handling*, 892 F. Supp. 724, 727 (M.D.N.C. 1995) (plaintiff was not a qualified individual with a disability when his doctor failed to issue a release so the plaintiff could return to work); *Anderson v. Inland Paperboard & Packaging*, 11 F. App'x 432, 438 (6th Cir. 2001) ("The second element of a prima facie case under the ADA is the requirement that a plaintiff be able to perform the essential functions of her job. . . . [Plaintiff]'s doctor, however, had not yet given her permission to return to work when her employment with [her employer] was terminated in February of 1998.  Accordingly, she was unable to perform her duties as a storeroom clerk.").

---

[8] Plaintiff mentions in her brief that she was "released" by her "treating University of Virginia Surgeon."  (Docket 84 at 22.)  This release was only a release from his care, not a return to work release.

Accordingly, because Plaintiff was not released by her doctor to return to work, as a matter of law, she was unable to perform her essential job functions with even minor assistance from her co-workers. Her argument to the contrary is, therefore, without merit.

Despite this fact, Plaintiff argues that Summers failed to engage in the interactive process to identify any reasonable accommodation for her. *See* 29 C.F.R. § 1630.2(o)(3). However, the court in *Ferguson v. Wal-Mart Stores, Inc.*, 114 F. Supp. 2d 1057, 1069 (E.D. Wash. 2000) addressed this issue and held that:

> [U]nder the ADA and [Washington State's Law Against Discrimination (WLAD)], when an employee seeks to return to work following a medical leave of absence necessitated by the onset of a disability (ADA) or a handicap (WLAD) which prevents her from carrying out the essential functions of her job, her employer's duty to reasonably accommodate her - *including its duty to engage in a dialogue regarding reasonable accommodation* - is triggered at the time the employee provides her employer with a release from her medical health care professional which essentially states that the employee has the ability to perform the essential functions of her job with reasonable accommodation.

*Id*. (emphasis added). Thus, because there was no release from Dr. Shammaa stating that Plaintiff had the ability to perform the essential functions of her job with or without a reasonable accommodation, Summers' duty to engage in a dialogue regarding the accommodation was not triggered. *Id*. *See also Haschmann v. Time Warner Entm't Co., L.P.*, 151 F.3d 591, 601 (7th Cir. 1998) (quotation marks omitted) ("Under the ADA, once an employer's responsibility to provide reasonable accommodation is triggered, the employer must engage with the employee in an 'interactive process' to determine the appropriate accommodation under the circumstances.").

The facts in this case present a different issue, however, one which was not argued by Plaintiff, but rather was addressed by Summers in its brief and presents a "tricky" or "oxymoronic anomaly[.]" *Garcia-Ayala v. Lederle Parenterals, Inc.*, 212 F.3d 638, 649 (1st Cir. 2000); *Id*. at 651

(O'Toole, J., dissenting). The only accommodation requested by Plaintiff was the additional ninety day period of extended medical leave that was denied by Summers. Under both the ADA and the WVHRA, a temporary leave of absence may, in some circumstances, be a reasonable accommodation. *See McNamara v. Tourneau, Inc.*, 496 F. Supp. 2d 366, 376 (S.D.N.Y. 2007) ("In some circumstances, a temporary inability to work may not be a bar to a disability claim; for example, an unpaid leave of absence can be a reasonable accommodation under the ADA . . . .") (citing *Graves v. Finch Pruyn & Co.*, 457 F.3d 181, 185-86, nn.5, 6 (2d Cir. 2006); *Humphrey v. Mem'l Hosps. Ass'n*, 239 F.3d 1128, 1136 (9th Cir. 2001); *Garcia-Ayala*, 212 F.3d at 649-50); *Cehrs v. Ne. Ohio Alzheimer's Research Ctr.*, 155 F.3d 775, 783 (6th Cir. 1998) (finding a genuine issue of fact existed as to whether granting further medical leave would have constituted a reasonable accommodation); syl. pt. 4*, Haynes v. Rhone-Poulenc, Inc.*, 521 S.E.2d 331 (W. Va. 1999) ("Under the West Virginia Human Rights Act, W. Va. Code [§§] 5-11-1 *et. seq*., required reasonable accommodation may include a temporary leave of absence that does not impose an undue hardship upon an employer, for the purpose of recovery from or improvement of the disabling condition that gives rise to an employee's temporary inability to perform the requirements of his or her job."). Thus, if there is evidence in the record for a reasonable juror to find that the extended medical leave was a reasonable accommodation that would have allowed Plaintiff to perform her essential job functions, Summers' motion for summary judgment must be denied. The Court holds that there is no such evidence.

Plaintiff has the burden of persuasion with respect to demonstrating that an accommodation is reasonable. *Wells*, 483 F. Supp. 2d at 509. Although in some instances additional medical leave may be a reasonable accommodation, it is only reasonable where "it is finite and will be reasonably likely to enable the employee to return to work." *McNamara*, 496 F. Supp. 2d at 376 (quoting *Graves*, 457 F.3d at 185-86 & nn.5, 6 (dicta)); *Myers v. Hose*, 50 F.3d 278, 283 (4th Cir. 1995) ("We therefore hold that reasonable accommodation does not require the [defendant] to wait indefinitely for [plaintiff's] medical conditions to be corrected, especially in light of the uncertainty of cure."). The West Virginia Supreme Court of Appeals stated in *Haynes* that:

> We want to make clear that in the context of this case, by disabling condition, we refer to a totally disabling medical condition of limited duration, so that following a temporary leave of absence for treatment and improvement, it is *reasonably foreseeable* that the plaintiff is likely to be able to return to work.

521 S.E.2d at 344 n. 17 (emphasis added). *See also Baucom v. Potter*, 225 F. Supp. 2d 585, 592 (D. Md. 2002) ("Courts have recognized that a leave of absence to obtain medical treatment for alcoholism can be a reasonable accommodation if it is *likely* that, following treatment, the plaintiff would be able to safely return to his duties.") (emphasis added); *Schmidt v. Safeway Inc.*, 864 F. Supp. 991, 996-97 (D. Or. 1994) ("a leave of absence to obtain medical treatment is a reasonable accommodation if it is *likely* that, following treatment, plaintiff would have been able to safely perform his duties . . . . An employer is not required to offer an accommodation that is likely to be futile because, even with the accommodation, the employee could not safely and efficiently perform the essential functions of the job.") (emphasis added). After all, "reasonable accommodation is by its terms most logically construed as that which presently, or in the immediate future, enables the employee to perform the essential functions of the job in question." *Myers*, 50 F.3d at 283.

Accordingly, to overcome summary judgment, Plaintiff must come forward with more than a "mere scintilla of evidence" in support of the position that the requested period of extended medical leave was reasonably likely or foreseeable to allow her to perform her essential job functions. *See Garcia-Ayala*, 212 F.3d at 650 (noting that factors to be considered as to whether requests for leaves of absence are unreasonable include "where the employee gave no indication as to when she might be able to return to work, and, instead, she simply demanded that her job be held open indefinitely; . . . [and] where, upon the employee's return to work, she would be unqualified . . . ."). Plaintiff has not proffered sufficient evidence to support such a finding. Dr. Shammaa's note to Summers asking that Plaintiff be given more time off does not show that the leave would have been a reasonable accommodation because the note does not establish that the leave was reasonably likely or foreseeable to enable Plaintiff to perform the essential duties of an ESS,[9] it was merely a request for the maximum duration of discretionary leave under Summers' policy.

In *Schmidt*, the court found that the plaintiff was entitled to partial summary judgment where the "defendant's own Medical Review Officer . . . advised defendant that plaintiff 'should be an excellent employee after he finishes treatment' and recommended 'he be considered on medical leave *until he completes treatment* and then he can *certainly* return to his regular job.'" 864 F. Supp. at 997 (emphasis added). Based on the doctor's recommendation in *Schmidt* it was reasonably foreseeable or likely that the plaintiff would be able to return to work and be able to perform his essential job functions after his leave, thereby making his medical leave a reasonable accommodation. *See also Haschmann*, 151 F.3d at 601 (finding leave request reasonable where doctor stated he was optimistic that lupus flare would be short-lived); *Criado v. IBM Corp.*, 145 F.3d

---

[9] One could argue that this is apparent by Plaintiff's failure to address this issue in her argument.

437, 444 (1st Cir. 1998) (finding leave request reasonable where employee's doctor was "optimistic that leave would ameliorate her disability").

Likewise, in *Haynes*, a WVHRA case, the plaintiff was pregnant and, due to complications associated with her pregnancy, was unable to work. 521 S.E.2d at 333. Because of her inability to perform the essential job functions, the plaintiff requested an extended period of medical leave and her doctor provided her employer with a form stating that she had a specific "anticipated return to work date[,]" which was two months after the baby's due date. *Id.* The West Virginia Supreme Court of Appeals held that because the leave requested would enable her to return to work following the pregnancy, a jury's finding that such an accommodation was reasonable should not be overturned. *Id.* at 344. In *Haynes*, it was apparent that the plaintiff's return to work was reasonably foreseeable because the disability that was preventing her from performing her job functions would cease to exist following her requested term of leave.

To the contrary, in this case there was nothing in Dr. Shammaa's note that was sufficient under the law to create a genuine issue of fact that would permit a reasonable juror to find that Plaintiff's request was a reasonable accommodation. As of the time it was written, there was absolutely no basis to conclude that at the end of the extended medical leave Plaintiff would have been able to perform her essential job functions. Plaintiff's situation is distinguishable from both the pregnant woman in *Haynes* and the employee in need of treatment for alcoholism in *Schmidt*. Indeed, there is also no evidence that, viewed at the end of that ninety day period, she was actually able to return and perform her essential job functions.

Moreover, even if the proposed accommodation of ninety days was reasonable, which it was not, Plaintiff would still not meet her burden of establishing that she was qualified to do the job of

ESS, "even with the accommodation of additional leave time to recuperate." *Hummel v. County of Saginaw*, 118 F. Supp. 2d 811, 817 (E.D. Mich. 2000). "Plaintiff bears the burden of demonstrating that she could perform the essential functions of her job with reasonable accommodation." *Tyndall v. Nat'l Educ. Ctrs.*, 31 F.3d 209, 213 (4th Cir. 1994). In *Hummel*, the court held that the plaintiff failed to meet this burden, even with additional leave, when she did not come forward with evidence that was sufficient to create a question of fact on which reasonable minds might differ as to whether she was qualified to do the job of building security officer because the only information in support of her claim was her own statement that she could return to work and a conclusion by her treating physician that she could return to work with no restrictions. *Id*. The doctor's conclusion, the court held, was not supported by the facts because there was no evidence that the doctor evaluated the plaintiff's physical ability to fulfill the job's requirements. *Id*.

In this case, Plaintiff has not offered sufficient evidence that would support a finding that the accommodation of an additional ninety days of extended medical leave would have permitted her to perform her essential job functions. Rather, the facts in this case support an entry of summary judgment more than those in *Hummel* because Plaintiff's doctor, unlike *Hummel*, did not conclude that she would be able to return to work after the medical leave. As such, Plaintiff has not met her burden of proving that, even with the additional leave, she could perform the essential functions of her job. Because she has not established a *prima facie* case under the ADA or WVHRA, summary judgment is appropriate.

14

## *IV. CONCLUSION*

For the reasons stated above, Summers' Motion for Summary Judgment [Docket 80] is **GRANTED**. The Court **DIRECTS** the Clerk to publish this opinion on the Court's website at http://www.wvsd.uscourts.gov.

                      ENTER:      May 12, 2008

_____
THOMAS E. JOHNSTON
UNITED STATES DISTRICT JUDGE